Thank you. Good afternoon, everyone. Please be seated. First case this afternoon is Barber v. . G.J. Partners, Inc. That's case number 4110992 for the appellant. We have Richard Chapin and for the appellee, Mario Palermo. Mr. Chapin, please proceed. Thank you. May it please the court, counsel, my name is Rick Chapin. I represent the defendant, appellant in this matter, G.J. Partners, Inc. This case arises from a slip-and-fall accident that occurred on February 16, 2007 when the plaintiff, a female, was stepping from her pickup truck and she stepped onto a patch of snow or ice on the defendant's property, the defendant being the owner-operator of a gas station and convenient mart located at North Gilbert Streets in Danville, Vermilion County, Illinois. As a result of the accident, the plaintiff sustained injuries to her left ankle. A suit was filed and it went to trial in Vermilion County August 22, 2011 and the jury returned the verdict in favor of the plaintiff on August 23, 2011. Post-trial motions were filed and heard. Those post-trial motions were denied and this appeal was timely filed. At this time, we're arguing that the trial court erred in failing to grant a motion for a directed verdict at the close of the plaintiff's case, failed to grant the directed verdict at the close of all the evidence, and then failed to grant a judgment notwithstanding the verdict. Understand that the standard for the relief sought at this time is that all the evidence viewed in the light most favorable to the non-movement, in this case the plaintiff, must be so overwhelmingly in favor of the defendant or the felon that a judgment cannot stand. Now, this case was pleaded, tried, and argued on the basis of the natural accumulation. It's a slip and fall on snow and ice and, therefore, subject to the rules and body of law established and known as the natural accumulation rule. Thus, the question on appeal, I think, is, well put, is there any evidence in the record that the plaintiff slipped and fell as a consequence of anything other than a natural accumulation of snow or ice? And if there is no such evidence in the record, then there was no duty on the part of the defendant to protect the plaintiff from the natural accumulation and no duty to warn her of the natural accumulation, and, therefore, there being no duty, the judgment cannot stand. The evidence in this matter is uncontradicted. The evidence regarding the issue of liability is found in the testimony of three witnesses. That's Alice Hoskins, who was a former employee of the defendant, Danielle Osmundson, who also at the time of trial was a former employee and who was present at the location on the day of the accident, and, of course, the plaintiff herself. Evidence regarding liability is also found in the weather records, which were Defendant's Exhibit No. 1 and admitted into evidence without objection, as well as the photographs of the premises and the condition that forms the basis for the cause of action, all of which were also admitted into evidence without objection. It's uncontradicted that several days prior to this accident, which occurred on February 16, there was a significant snow event that hit the central Illinois area, and somewhere from starting on or about February 12 through February 14, there was a significant snow, an accumulation of 11 inches, and that was followed by or contemporaneous with a severe drop in the temperature. The temperatures went below freezing, they went below zero, and they stayed there until actually after the accident. The accident occurred at about 9 o'clock a.m. on February 16, and in the hours just before that, the temperature had been sub-zero. It was recorded as being zero degrees in Danville at the time of the accident. The significance here is that this is not a freeze-thaw type of case. There's no evidence that there had been a freeze-thaw cycle with water flowing across a parking lot. This is simply heavy snow, and the evidence is that the snow that had fallen at this parking lot had been plowed, and that the plowing had been very effective and that it had removed essentially all of the snow from the parking or the gas station lot area, but there was some snow or ice that remained and covered one of these manhole covers that are common to gas station parking lots, and it covered that because it was slightly recessed there in the concrete. There's no evidence that that snow was anything other than what remained as a result of the original snowfall and then the plow. The testimony was that there had also been some salt or ice melt product sprinkled on that patch of snow or ice where the plaintiff was determined to have slipped and fallen at some time prior to her fall. Now, the natural accumulation rule basically says you have no duty as a landowner to remove, remediate, warn against, protect against the natural accumulation of snow or ice. So if the snow falls and you do nothing and somebody comes on your property and falls, you have no liability. But there are corollaries to that which include the fact that you can plow your property and as long as you don't plow negligently or carelessly, what remains after you plow is still a natural accumulation. You can also salt, put salt down, and that, even though it may alter the form or condition of the snow or ice, does not cause an unnatural accumulation. It still remains a natural accumulation subject to the protection of that rule. Cars can drive over it, cause ruts and uneven surfaces because of the temperature changes and the forces of vehicular traffic and pedestrian traffic, and it still remains a natural accumulation. And all of this makes sense because there is a need to protect the landowner from liability for all of the extreme weather conditions that can be experienced in central Illinois or anywhere in Illinois. And it makes sense that the law permits them to make efforts to, in fact, go out and remove that snow to protect people who are invited onto the premises so that you can go out and move that snow through a snow plow or other device and not thereby expose yourself to liability simply because you've altered the original form of that snow or ice. Likewise, you put down salt and that doesn't expose you to liability. You've got to do more in order to become exposed to liability. You have to have snow or ice that accumulates because of your failure to maintain the property in some way, such as gutters that are not emptied and so the water pours over the site and freezes where it would not otherwise have frozen. Or you plow negligently, and in those cases typically we're seeing it's pushed up a slope and then with the freeze thaw the water floats down to where it wouldn't otherwise have been and people slip on an unnatural accumulation. But in this case, there is nothing other than the evidence that this was a natural accumulation of snow or ice and that's what she slipped on. Well, counsel, recognizing your construct of what carries liability and what does not, it's my understanding that the plows went over the manhole covers, leaving a little gap between the pavement surface and the top of the cover. That's what the plaintiff slipped on, what was left after the plowing. So how does that particular circumstance fit into your broad discussion of what you're liable for and what you're not liable for? I don't think that alters the general rule. It is still snow or ice that remains as a result of the natural snow event and, at least in the evidence of this case, snow removal that was not carelessly or negligently performed. The fact that it is now in this recessed area, the law does not say that it's the snow or ice that remains only on a perfectly flat surface or carve out exceptions from that. And to me the important part here is that this lid or this manhole cover, there was no evidence that it was there improperly or unnecessarily or that it was improperly constructed or that it was not maintained properly or defective or not properly seated. There was nothing to show that that in any way caused an unnatural accumulation. It simply allowed a natural accumulation to exist, and it was. It was slightly recessed, which there was no evidence that that was improper, and it was a characteristic of the business. You know, if you had that situation in something where it was unnecessary or it had been there and allowed to decay and it was unnecessary to the current operation of the business. That's how you fill the tanks, right? Pardon? That's how you fill the tanks. That's right. The testimony was that you get down there to check gauges and valves and things like that. So I think that's important here. This was a functioning characteristic of the property of a gas station, and it's not something that was unnecessary to the fairer business of that. And there was no testimony that it was in any way defective or poorly maintained, improperly constructed, or anything like that. So when the snowplow goes through and leaves that there, then it's no more than if the snowplow had gone through and hit a little and there had been a slight depression in the property and left some snow where it didn't scrape down to the concrete. So I really think that that plate there is not the savior for the plaintiff's case here. This still remains subject to the natural accumulation rule. Is there any dispute whether the plaintiff actually fell on the manhole cover? I guess, better put, are you using that as part of your defense? I am not. I am conceding that, you know, based upon the evidence, I can't say that she fell somewhere else. No one actually saw it. The plaintiff herself said she didn't look, but it was there in the area where she had fallen, and that's the only place where people had said there was snow or ice was on that manhole cover. But I think that the manhole cover is, in all fairness, it's a red herring here that does not alter the overall rule. Likewise, the testimony was that this became extra slippery when covered with snow or ice, that the manhole cover when covered with snow or ice was extra slippery. Well, that's not the standard for the natural accumulation rule. There's not one rule for extra slippery and one for regular slippery and one for kind of slippery, and that's not a workable rule. You really can't fashion a useful body of law based upon the degree of slippery. And it's quite honestly, it defies common sense to say that this is more slippery when covered with ice than concrete. What's slippery is the ice for the snow. It's covering the surface. And so I found no cases that judge liability based upon the surface upon which the ice or snow is found, concrete versus asphalt versus bare dirt versus something else. And so here, that extra slippery is really a non-issue, I think, in the analysis of this. I ask if there's a question as to what the unnatural condition is here. And I'm at a loss to find something that I can label as an unnatural accumulation. Counsel, I have a question that kind of puzzles me. In fact, there are lots of cases that say judgment NOV is inappropriate if reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented. That's what the case law says. And yet, what we're doing here as a court is addressing duty, which is a question of law. How do you reconcile that standard I just read to you with the question before this court, as a matter of law, what's the duty out here? Well, I think to address the issue of duty, you start with the basic rule, that there is no duty to remove a natural accumulation. So we have to look. Are there facts that this is an unnatural accumulation? And in the absence of any facts showing it to be an unnatural accumulation, then you have an issue of law. And that's how directed verdict and summary judgment gets granted in these natural accumulation cases. Those fit together in your mind, at least. I just need to read it a couple more times, I guess. I think they do. It's, you know, if you had the argument that the plaintiff or that the defendant had been negligent in removing the snow, then you've got an argument that's an issue of fact. It's a fact-driven argument. And if it's concluded one way, it's an unnatural accumulation. If it's decided another way, it's not an unnatural accumulation. But here, there was no such contention. I think the plaintiff's case really sort of jumps over the issue of duty and goes to argue breach by saying that we didn't warn of the accumulation there. We didn't put out a barrier. We didn't put down a proper salt or something like that. But that jumps over the primary issue, which is do we have the duty to do any of those things in the first instance. And I think under the facts here, we do not. This was on the uncontroversial grounds. But your client didn't have cones, for example, they could have placed on them. Could have. But you're saying that doesn't really make any difference because the issue for the court is one of duty. Correct. Okay, why wouldn't that be one of the facts that we can draw reasonable inferences from to determine what it is? Because it's sort of like there have been cases where they focus upon it occurring at an entrance to a place of business. And they said there was improper illumination. And they say, well, that is if the only risk or the only hazard presented by that point of entrance is the accumulation of snow or ice. And there is no liability because there is no duty. But if that is enhanced by the fact that there is poor illumination and it's a hidden set of steps and you can't see, then really it's not the snow or ice that's the hazard at that point. It's the poorly illuminated point of entrance. And that's a different theory. Then it's you're talking about a negligent construction case. I think that it's sort of like if you get into that Sommese versus Mahling where there was a slip and fall on water at an entrance of a terrazzo floor. Now that wasn't resolved on a natural accumulation rule. That was resolved on the basis that there was a grit. There was something that was to be put in the terrazzo mix before it was poured that would provide slip resistance. And they had experts who testified to that being the proper construction technique, which hadn't been followed. Thereby, there was the breach of duty. But it was a construction defect, not a slip on natural accumulation of water on the floor. It wasn't that the floor was extra slippery and therefore we imposed liability. It's that the poor construction had resulted in a condition that should not have existed had the proper duty been followed in the construction. Are there any other questions? I've seen them, but you will have rebuttals. I mean, I hate to keep hitting the same thing, but I don't see where there were facts presented that this was anything other than snow that remained after plowing, which had been salted and may have been subject to vehicular traffic. All three of those things being the accepted corollaries to the no duty if it's a natural accumulation rule. Thank you. Oh, and I would apologize to the court for my miscitation. I called the McCann v. Bethesda Hospital case, the Blackhawk Hotel case, in my initial brief and miscited that. That was a very bad error on my part. I thank counsel for having pointed that out to me before I filed my reply brief. I apologize to the court for my miscitation. Thank you. Thank you. Good afternoon. May it please the court, counsel. My name is Mario Palermo. I represent the appellee in this case. I first want to start out by addressing some of the factual issues that were brought up. This particular manhole cover, the testimony was, was used once in 14 years. Alice Hoskins, the manager who was one of the employees testified, said she saw it used once in 14 years. It wasn't used, therefore, to refill the gas tanks. I think it may have had some role with respect to gauges, but it looked like it was hardly ever used. The issue before us is the duty with respect to this small area, this manhole cover, right near a heavily, heavily high traffic area, right by the entranceway to the convenience store. Folks parked there all the time. In fact, in this particular instance, when Annette Barber got out of her car, that's where she took her first step and went down. So, not only was it a very small area near the entranceway, but it was also a known hazard. Both employees testified that they either themselves had slipped on it while they were working, or were aware of other instances where customers had slipped on it or customers had complained. So, when addressing whether this is an unnatural accumulation, all of the cases really say, merely doing one thing doesn't turn it into an unnatural accumulation. That one thing meaning merely putting salt on it, or merely plowing. But in this case, there's a variety of things, acts and omissions. The case that really is important is this Erasmus case, which talks about merely plowing and leaving a layer of snow or ice beneath. So, if you start out with a six-inch accumulation and a plow goes by and there's a two-inch accumulation underneath it, and that two inches is basically the snow that naturally fell, the cases say that that is not turned into an unnatural accumulation. Well, this manhole was lower than the rest of the parking lot, right? Exactly. That's right. And the blade that was used to clean off the parking lot, I presume, is flat, like they, I mean, I think common sense are. Yes. Why isn't Council right? It's a little lower, so the blade actually goes, as it goes across it, it doesn't even touch the lower, the accumulation already on the plate, because the blade just goes over the top of it, so what is left on the plate, which is indented from the rest of the parking lot, was already there, therefore it was natural accumulation. That sounds like a pretty logical argument. The reason why Council is incorrect is because that's not what the testimony was. The testimony from Alice Hoskins was that the plow would not only plow over it, but it would actually pack snow into it, snow that came from other areas of the lot. So the snow and ice that was in this recessed area wasn't the snow or ice that naturally fell into it. It was also snow from other parts of the lot that was pushed into it. That was her testimony, and she was very firm on that issue. Does that make sense to you, Council? It does. I would like to take my glass of water here. If we had it filled up with salt, and I took a ruler across it like that, I didn't do anything to anything below the top of the glass, and it's kind of the same thing, although it's only about that much lower, as I understand it. So you just level it off with the rest of the parking lot, but what was already in the indented portion of the manhole would not have been affected at all. But you're saying that was a testimony, and it was clear? Well, I guess at that point we're starting to weigh the credibility of the witnesses and what their observations were of what actually happened. Well, you want us to weigh their observations that there were cones that could have been used, and that there's salt that could have been used, and it was right by the entrance. Whether it's natural or unnatural, what difference does it make where this plate is? What difference does it make to duty? Is the duty higher if it's next to the entrance, or is there a duty, period? Does it make any difference that the gas station had cones, which they filled to use? Does it make any difference that people fell there before? Do any of those things add to the legal question of whether there was a duty based upon natural versus unnatural accumulation? Classically, a duty analysis has a number of factors involved in it, and when you look at all those different factors, the magnitude of the burden, the risk, the relative knowledge of everybody concerned, the fact that there is a known hazard right near the entranceway where the employees who worked there testified was very slippery, caused problems, and had plows that not only took snow off of it, but packed it into it, because it's not... So if she was a pedestrian and she walked around the corner, and this plate was one of those plates where you fill the tanks, and she fell on that, it would be a completely different case. It would... Or would it still be natural versus unnatural? Well, those are the factors that weigh into the duty analysis. So you have a greater degree of duty when it's more foreseeable that there's going to be a problem. So in any trip and fall case, folks factor in whether it's a high traffic area. How do you have a greater degree of duty under the natural accumulation rule? I mean, it is what it is. You only have a duty to, if you're going to remove the snow, to do it as best you can. If they don't do anything, there's no duty at all, right? That's true. So I don't see where you get a higher duty because of the placement of this plate as opposed to around the corner. Well, if you're talking just about the natural versus unnatural accumulation rule, in this particular instance, the testimony was that it was the snow and ice that's in this... It's not just flat across. It was sort of like a bowl. Now, it wasn't a pronounced bowl, but if you look at the pictures, it's sort of like the height below the surface of the ground at the middle of it is larger. It's probably half an inch right at the edge. It was maybe a quarter inch. So it was a bowl. It wasn't just you swept across it and it was flat. I think the bowl shape of it is what contributed to snow from other areas getting packed into it as the plow went over it. These issues regarding where it's at do factor into whether they were negligent in their removal, but if we're just talking about whether it's unnatural versus natural, I think the controlling testimony is Alice Hoskins' testimony in this case regarding the fact that not only was snow and ice pushed from other parts a lot, but the salt that was put on it would melt it a little bit, and now you don't have just mere snow or mere plowing. You have a combination of both working in concert to create an area that was causing, on a regular basis, problems for customers and employees near the entranceway. Do you need to be able to show where she fell? We did. You mean because somebody inside the building said, That means she fell on the manhole? Well, there was more than that. Danielle Osmunson was the employee who was working. She saw the truck pull up. She testified, actually, that she was concerned, even before Alice and Annette got out of her vehicle, that she would fall because she parked right where her door would enter and open up into that manhole cover. And then, sure enough, she looked, and she didn't emerge, so she thought she must have fallen. And when she came out, there she was laying on that manhole cover. Even though the plaintiff doesn't know where she fell. She doesn't know where she stepped on. Right. She knows she took a step and first, right out of the shoe, she fell. I mean, the Erasmus case that I keep pointing to really defines the issue with respect to plows. It says, The plaintiff must show that the exposed stratum of ice was itself an unnatural accumulation created directly or indirectly by a defendant. And here we have testimony from one of the defendant's own employees who says that the stratum of ice that caused the fall was created by these plows pushing, or at least in part by plows pushing snow and ice into this bowl right near the entrance to the convenience store. I don't remember. Was it Erasmus? Was Erasmus up on appeal on a request for a judgment in OB having been denied by the trial court? I don't want to guess, Your Honor. I don't remember. Well, if it was not, would that make it distinguishable, then, from what we have here today? If it was a case where it was summary judgment, Brandon? Yes. If it possibly was, I'll have to review it. The main issue in that case was, was it unnatural or natural and that's every step of the way those issues have been litigated. And it was the same standard of summary judgment, the same standard in motions eliminate at trial, post-trial motions, and here today. That's all I had. If there were any questions, I'd be happy to answer. I see none, counsel. Thank you. And we'll have rebuttal now, please. Thank you. And looking very quickly, it looks like Erasmus was summary judgment granted for the defendant at the trial level and affirmed on appeal. Thank you. I want to address the Alice Hoskins testimony, this suggestion that she said that this is snow coming from some other area that's getting packed in there. When, if you would look at the totality of her testimony, I'm not saying now that she was impeached on cross-examination. On cross-examination, I asked her a series of questions just to clarify what she had said. So there's no weighing her testimony or her credibility. I asked her, now you just testified about the snow on these metal plates. Now when the snow would fall, if you had a heavy snowfall, the snow would fall and it would land on the concrete and on the ground, right? Right. Question, it would land on top of these plates, correct? Answer, correct. Question, if more snow fell, there would be more snow on top of those plates. And she went on and she acknowledged that that's what's happening. And then the plow would come through and push it away, but what left, what remained was what was below the surface level. So I don't think that this requires you to weigh your credibility or her testimony against another witness. That's simply her clarification. That, that's what she meant. So, and when you look at the photographs you see, it's not that these plates are underneath a canopy or some overhang where they would have been free from the snow or ice prior to the plowing and the plow then comes along and moves it on top of it. And, you know, the suggestion that maybe there's some snow being pushed, well you can't have snow removal without snow moving. And maybe there is some snow that was five feet over here and in the course of the plowing it gets pushed and now it's, that particular snow is now mixed with what was already there. I mean, that would be an unworkable rule. You might as well throw away the plowing rule if that's going to alter it. Because as it goes across, snow's going to move and you can't identify that that's precisely the snowflake that fell in precisely that spot. And that's not what the court intends to do. Are you negligent when you're plowing? And if you're not, then it's still a natural accumulation. As far as the accident occurring near the entrance, most of these slip and fall cases occur at an entrance. It's sort of like Eddie Sutton, when asked why he robs banks, he says that's where the money is. Why do people fall at the entrance? That's where they're going. They're coming in from outside. They're going in. But we got, you know, there's a case where it was a third floor stepping off the elevator in a department store and there was water and the only evidence was that it had been tracked in and that's where it ended up. It was still a natural accumulation, clear in there. But the entrance, that's where you fall. That's where you're coming in and it's getting tracked in and the natural accumulation rule still protects the landowner there. It was Willie Sutton. Pardon? It was Willie Sutton. Eddie Sutton robbed athletic departments You're right. I apologize. There's still a good point though. I think that all of the arguments made, as the courts recognize, sort of jump over this racial issue of duty and get to well why didn't they put out the warning cone? It was there. Well you don't have to put it out there. Maybe you could have put it out there but they testified too that it's in the middle of the parking lot and you're going to have people hitting it and knocking it over. But without a duty to put it there you can't be faulted for not having put it there even though you had one. That would be the same as saying you had salt sitting right there why didn't you put it out? You have no duty to put out salt. They'll probably put it there in the future. It may well be. It may well be there in the future but to conclude there's an excellent rationale for the natural accumulation rule and its corollaries that recognize weather conditions and landowner responsibilities in the state of Illinois and to hold that the landowner's burden is dependent upon the degree of slippery or that it's dependent upon the nature, solely on the nature of the surface it falls upon without evidence of some other negligence would be a step backward and would create more uncertainty rather than certainty. This case falls squarely within the natural accumulation rule. There's no evidence of the contrary. Even given the strict standard of pedigree for when NOV should be granted, this case is there. Directed verdict should have been allowed NOV should have been granted and we ask that the court correct the error at the trial court level. Thank you for your time. Thanks to both of you. The case is submitted and the court stands in recess.